UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO
_____

| | |
|---|---|
| PETRA YOUNGQUIST,<br><br>  Plaintiff,<br><br>v.<br><br>THE BOARD OF COUNTY COMMISSIONERS FOR CURRY COUNTY, NEW MEXICO, a political sub-division existing under the laws of the State of New Mexico, LANCE PYLE, individually and in his official capacity as Manager of Curry County Board of County Commissioners, TORI SANDOVAL, individually and in her official capacity as Administrator of the Curry County Detention Center, ROBERT SANDOVAL, individually and in his official capacity as Curry County Commissioner, BEN McDANIEL, individually and in his official capacity as Curry County Commissioner, FRANK BLACKBURN, individually and in his official capacity as Curry County Commissioner, WENDELL BOSTICK, individually and in his official capacity as Curry County Commissioner, TIM L. ASHLEY, individually and in his official capacity as Curry County Commissioner, BRITTANY HARRISON, individually and in her official capacity as Curry County Correctional Officer, NICOLE STUART, individually and in her official capacity as Curry County Correctional Officer,<br><br>  Defendants. | No. 2:15-cv-00077-BRB-SMV |

_____

ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS
_____

This case arises out of an incident in which two Curry County, New Mexico correctional officers allegedly tased Plaintiff Petra Youngquist and subjected her to a strip search and body cavity search. Youngquist brings multiple claims under 42 U.S.C. §§ 1981, 1983, and 1985 and New Mexico state law against the correctional officers as well as other Curry County officials and employees. Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Count I, which alleges a violation of 42 U.S.C. § 1983, against all Defendants other than Defendants Brittany Harrison and Nicole Stuart. They also move to dismiss Counts II and III, which allege violations of 42 U.S.C. §§ 1985 and 1981, respectively, against all Defendants. The Court will grant Defendants' Partial Motion to Dismiss. The only remaining claims include the § 1983 claim in Count I against Harrison and Stuart in their individual capacities and the state-law tort claims in Count IV.

I.

The Court takes the facts from Youngquist's Complaint. On July 14, 2014, Youngquist was brought to the Curry County Detention Center for misdemeanor offenses including jay-walking. Defendants Brittany Harrison and Nicole Stuart, two female Curry County Correctional officers, took Youngquist to a restroom and insisted that she undress and submit to a full body cavity search. While Youngquist was facing away from Harrison, Harrison tased Youngquist's left shoulder, even though Youngquist's

hands were behind her and she did not move or resist the officer.  After she was tased, Youngquist covered her breasts with her arms and asked for her shirt.  Harrison then shot the Taser at Youngquist again at point blank range.  Harrison handed the Taser to Stuart, who pointed it at Youngquist to force her to comply with the body cavity search.  Stuart was not trained or experienced in using a Taser.  To cover up their actions, Harrison and Stuart filed false statements claiming that Youngquist was intoxicated, uncompliant, swinging her arms towards them, and resisting.  Youngquist asserts a video tape of the tasing reveals that Harrison and Stuart were lying about her actions.

At the time of the incident, Curry County had a written policy allowing for a "strip search" only when an individual was "incarcerated for felony offenses of a violent nature or for any arrest involving the use of a weapon; or use, possession, or distribution of narcotics."  Curry County also had a written policy allowing "strip searches" for "minor offenses of a nonviolent nature" only when the staff had "articulable, reasonable suspicion to believe that the individual is concealing contraband or weapons."  The County had another written policy requiring "an affidavit for a search warrant" before staff conducted a body cavity search.  Defendants did not seek or obtain a search warrant before examining Youngquist's body cavity.  Youngquist asserts Curry County had a policy or custom of ignoring these written directives within the Detention Center and failing to properly train staff on the written policies and procedures.

Youngquist also alleges that Defendant Lance Pyle, the Manager of the Curry County Board of County Commissioners, rarely entered the Detention facility because he feared inmates spitting on him.  The Commissioners ratified and approved Pyle's

infrequent visits to the facility. According to Youngquist, the Commissioners allowed Pyle to improperly micromanage from a distance without the proper training, experience, or education in operating a detention facility.

## II.

Because Youngquist originally filed her Complaint in New Mexico state court, she urges the Court to review her Complaint under New Mexico's pleading standards, which are less stringent than the pleading requirements described in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Madrid v. Village of Chama*, 283 P.3d 871, 875–76 (N.M. Ct. App. 2012) (declining to adopt the plausibility standard from *Iqbal* to construe New Mexico's standard for a motion to dismiss). Federal courts "apply state procedural rules to preremoval conduct." *Hart v. Capgemini U.S. LLC Welfare Ben. Plan Admin. Document*, 547 F. App'x 870, 872 (10th Cir. 2013) (unpublished); *see Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010) (determining whether a plaintiff adequately served a defendant in state court before removal under state rules). But the Federal Rules of Civil Procedure apply "to a civil action *after* it is removed from a state court." Fed. R. Civ. P. 81(c)(1) (emphasis added). Youngquist has not requested leave to amend her Complaint to comply with federal pleading standards, although the case has been in federal court over a year. Additionally, she pled federal claims and should have recognized the likelihood of Defendants removing the case to Federal court. *See Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 938–39 (8th Cir. 2012) (noting that, by "including federal claims in his state-court complaint," the plaintiff "subjected himself to the possibility that the defendants

4

would remove the case to federal court . . . where his complaint would be governed by the current federal pleading standard" and further noting that in the five months the case was in federal court, the plaintiff never sought leave to amend his complaint to conform to the current federal pleading standard).  Thus, this Court will apply federal procedural rules in reviewing Defendants' Partial Motion to Dismiss under rule 12(b)(6) and will analyze Youngquist's Complaint under federal pleading standards.  *See Alvarado v. KOB–TV, LLC*, 493 F.3d 1210 (10th Cir. 2007) (analyzing a complaint filed in state court under federal pleading standards).

To withstand a motion to dismiss, a plaintiff's complaint must have enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Two principles underlie this standard.  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678.  Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  And second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.  In other words, a plaintiff must offer sufficient factual allegations to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.  "[A] court should disregard all conclusory statements of law and consider whether the remaining *specific factual allegations*, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (emphasis added).

The nature and specificity of the allegations required to state a plausible claim will vary based on context. *Id.* at 1215. "The *Twombly* standard may have greater bite" in the context of complaints containing § 1983 claims against individual government actors because "they typically include complex claims against multiple defendants." *Id.* at 1215 (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1249 (10th Cir. 2008)). "[I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins*, 519 F.3d at 1250 (emphasis in original).

### III.

A. **Section 1983 Claim**

Youngquist's first count is a constitutional claim under 42 U.S.C. § 1983 for "cruel and unusual punishment" in violation of the due process clause of the Eighth Amendment. Youngquist does not individually name any Defendants in the paragraphs describing her § 1983 claim, but she asserts that her rights "were violated by Defendants when Plaintiff was shot with a Taser and searched" because the tasing "constituted excessive force for the need presented." Complaint ¶¶ 40–41. She alleges "Defendant's use of a tazer against Plaintiff was used intentionally, maliciously and wantonly with the purpose of causing harm to Plaintiff," "Defendant's motive was to punish Plaintiff, not to accomplish any legitimate goal," and "Defendants acted maliciously and in callous disregard of, or deliberate indifference to Plaintiff's rights." Complaint ¶¶ 43–45.

6

Youngquist is clearly bringing a § 1983 claim against Harrison as the officer who tased her and conducted the strip search.  The Complaint may also assert a §1983 claim against Stuart, who was present and did not stop Harrison.  *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) ("[A] law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983.").  The Defendants do not move to dismiss the § 1983 claim against Harrison or Stuart and admit Youngquist stated a claim against Harrison.  Instead, Defendants request the Court to dismiss the § 1983 claim against the remaining individually named Defendants as well as Curry County.

**1. Individual Capacity Claims**

Defendants move to dismiss Youngquist's § 1983 claim against Defendants Lance Pyle, the manager of Curry County Board of County Commissioners; Tori Sandoval, the Administrator of the Curry County Detention Center; and individual Curry County Commissioners Robert Sandoval, Ben McDaniel, Frank Blackburn, Wendell Bostwick, and Tim L. Ashley.  Defendants argue that Youngquist failed to distinguish individual behavior among them or link any individual behavior to the alleged constitutional violations and that her allegations are speculative and conclusory.  The Court agrees.

If Youngquist intended to bring her § 1983 claim against any Defendants other than Harrison or Stuart, she only did so by incorporating by reference the remainder of the Complaint, a strategy that, in this case, fails to give notice to Defendants of the claims against each of them.  Youngquist's Complaint is deficient as it does not "make clear

7

exactly *who* is alleged to have done *what* to *whom*." *Robbins*, 519 F.3d at 1249–50 (emphasis in original).

Even assuming that Youngquist is bringing a § 1983 claim against all Defendants, her Complaint also fails to provide enough factual, rather than conclusory, allegations that Defendants have individually acted in a way to violate her constitutional rights. Youngquist alleges the following facts against the Commissioners, Sandoval, and Pyle: Pyle rarely entered the Detention facility because he feared inmates would spit on him. He micromanaged the detention facility from a distance without the proper training, experience, or education. The Commissioners ratified and approved Pyle's conduct in rarely entering the Detention facility and allowed him to micromanage the facility without the proper training, experience, or education. The Commission is liable for a policy of ignoring, condoning, and permitting a pattern of civil rights violations against inmates, including tasings and failing to discipline officers. The Commissioners, Sandoval, and Pyle were reckless, careless, intentional, negligent, or deliberately indifferent in training, hiring, administering, and supervising Harrison and Stuart and further failed to investigate, review, and discipline Harrison's and Stuart's conduct. A plausible inference is that the Commissioners, Sandoval, and Pyle were familiar with the pattern and practice of failing to investigate complaints and mistreating Hispanics. The Commissioners, Sandoval, and Pyle had the power to restrain Harrison and Stuart and prevent them from violating Youngquist's rights, but they failed to do so and became a party acting in concert to harm Youngquist.

The Court is to disregard conclusory statements of law and consider whether the remaining factual allegations plausibly suggest Defendants are liable, but the bulk of Youngquist's allegations simply parrot the standards for a constitutional violation without filling in any details. She also fails to allege that any improper conduct *caused* Harrison and Stuart's actions. For example, while Youngquist alleges Stuart was not trained to use a Taser, it was Harrison, not Stuart, who allegedly tased Youngquist. And while Youngquist contends the officers were not properly trained on the county's policies regarding strip searches and body cavity searches, she does not assert that Harrison and Stuart did what they did because they lacked training; rather, as alleged, Harrison and Stuart knew their actions were unlawful because they filed false statements attempting to cover up the incident.

The only specific factual allegations the Court can glean from Youngquist's Complaint, other than those against Harrison and Stuart, is that Pyle rarely entered the Detention facility because of his fear of getting spit on and the Commissioners ratified his conduct. Youngquist apparently asserts a theory of supervisory liability against Pyle and the Commissioners, but that theory also fails. To establish a §1983 claim against a defendant based on his or her supervisory responsibilities, a plaintiff must show "(1) personal involvement; (2) causation; and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). The Complaint does not make clear how Pyle's absence from the detention facility personally involved him in Harrison's and Stuart's search, nor does it show how his absence caused Harrison and Stuart to act as they did. And beyond simply saying that he acted recklessly, carelessly,

9

intentionally, negligently, and with deliberate indifference, Youngquist's Complaint does not allege facts to show that he acted with the requisite state of mind. Of course an official cannot escape liability by turning a blind eye to constitutional violations of his subordinates, but in this case, Youngquist simply fails to allege facts sufficient to show that Pyle's failure to supervise *caused* a constitutional violation or that he acted with the requisite state of mind.  Likewise, any alleged failures on the part of Defendants to investigate Harrison's and Stuart's conduct fail to establish liability.  Failing to investigate an incident of excessive force *after the fact* cannot *cause* that excessive force in the first place.

Youngquist also alleges the Commission is liable for a policy of ignoring, condoning, and permitting a pattern of civil rights violations against inmates, including tasings and failing to discipline officers.  But lumping all the Commissioners together is insufficient to show that they were personally involved in any constitutional violation. *See Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) ("It is not enough for the Complaint to lump the four named defendants and presumably the 1–50 John Does into the collective term 'Defendants' and allege that they directed [the plaintiff] to register and serve probation as a sex offender.").  Youngquist's claims of wrongdoing against Pyle, Tori Sandoval, and Commissioners Robert Sandoval, McDaniel, Blackburn, Bostwick, and Ashley are merely labels and conclusions, nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678. Thus, the Court will dismiss Count I, which alleges a violation of 42 U.S.C. § 1983, as against all Defendants in their individual capacities other than Harrison and Stuart.

## 2. Official Capacity Claims

To the extent Youngquist brings her § 1983 claim against Defendants in their official capacities or against The Board of County Commissioners for Curry County, and thus against a municipal entity, this claim also fails. To bring a § 1983 claim against a municipality, a plaintiff must allege "action pursuant to official municipal policy" caused her injury. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id*. at 60–61. An informal custom amounting to a municipal policy must amount to a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (internal quotation marks omitted).

Under the "widespread practice" theory, Youngquist argues that Curry County had a "policy" of, among other things, ignoring written policies regarding body cavity and strip searches, failing to properly train employees on the written policies and procedures, violating civil rights of inmates, ignoring officers' misconduct, and neglecting to address complaints from Hispanic persons. But Youngquist's allegations are insufficient to pass the rule 12(b)(6) standard. Many of the allegations are conclusory and simply repeat the required legal standard, such as Paragraph 60, which does not provide any details of how the County trained or supervised its employees, how such training and supervision were deficient, or how the need for more or different training or supervision was obvious.

11

Other accusations, such as the pattern of constitutional violations included in Paragraph 7, provide only conclusory charges of wrongdoing rather than "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the illegal policy. *See Twombly*, 550 U.S. at 556. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted). Many of Youngquist's allegations are also unrelated to the conduct taken against her and thus could not be the moving force of that conduct, such as her allegation that the Commission covered up a correctional officer's sale of narcotics to juvenile inmates. A challenged policy or practice must be "closely related to the violation of the plaintiff's federally protected right." *Schneider*, 717 F.3d at 770. Youngquist has failed to allege facts sufficient to show a municipal policy that caused the alleged unconstitutional incident with Harrison and Stuart. The Court will thus dismiss Count I as against the Board of County Commissioners for Curry County and Defendants in their official capacities.

### B. Section 1985 Claim

Youngquist's second claim is that Defendants violated 42 U.S.C. § 1985 by conspiring to deprive her, "a citizen of Hispanic heritage," of her constitutional rights by unlawfully searching her and then covering up the officers' misconduct "because of or on account of" her race. Complaint ¶¶ 47–48. She asserts Curry County "has a history of failing to investigate, charge, and prosecute white citizens who harmed individuals from

12

the Hispanic community with crimes and incarcerating Hispanics at a greater percentile than their share of the over-all population of Curry County, New Mexico," which leads to a "plausible inference . . . that the actions taken against Plaintiff by all Defendants were intended and motivated by Plaintiff's race, color, and/or ethnicity." Complaint ¶ 50 at 13.

Defendants move to dismiss Youngquist's § 1985 claim against all Defendants because, in their view, her allegations in support of the conspiracy claim are conclusory. They argue she "lumps the Defendants together as a generalized group and allege the existence of a conspiracy," but she fails to "cite factual details in support of these conclusory contentions." Defendants' Partial Motion to Dismiss at 11. Although Youngquist complains of the County arresting and incarcerating Hispanics at a greater percentile than white citizens, Defendants point out they "were not the arresting or charging entity or individuals at all, but are the receiving facility charged with holding Plaintiff pre-trial." *Id.* at 11 n.4.

Section 1985(3) prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a claim under § 1985(3), a plaintiff must show (1) a conspiracy, motivated by racial or class-based discriminatory animus, "(2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

The Court agrees with Defendants that the majority of Youngquist's allegations regarding § 1985 are conclusory. Although Youngquist points to a number of paragraphs

13

in her Complaint to support her § 1985 claim, the allegations fail to allege specific facts amounting to conspiracy, and even if they allege a conspiracy, they fail to connect that alleged conspiracy to the improper conduct against Youngquist. The most specific allegation Youngquist makes is that Harrison and Stuart conspired together by attempting to cover up any alleged misconduct during their search. While this conduct is arguably enough to show a conspiracy, Youngquist has not alleged that the officers acted with racial animus. Instead, she relies on "plausible inferences" from unrelated racially-driven conduct in the county, such as incarcerating Hispanics at a greater percentile than their share of the overall population, even though Youngquist does not assert that Harrison or Stuart made the decision to arrest her. Even if the County has overlooked a pattern of officers tasing inmates as alleged in Paragraph 7, Youngquist again fails to connect the pattern to any racial animus. The Court will dismiss Youngquist's § 1985 claims against all Defendants because her allegations are conclusory and disconnected from the conduct taken against her. *See Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) (affirming dismissal of the § 1985 claims because "we find nothing but vague and conclusory allegations in support of such claims").

### C. Section 1981 Claim

Youngquist brings her third count against Defendants under 42 U.S.C. § 1981, alleging that Defendants "have engaged in actions and abuses which have deprived Plaintiff, a citizen of Hispanic heritage, of rights, privileges and immunities secured by the United States Constitution, including but not limited to, rights secured by the Fourth, Fifth, Eight, and Fourteenth Amendments and other laws in violation of 42 U.S.C.

14

§ 1981." Complaint ¶ 54. She asserts the correctional officers "failed to prevent the commission of, or neglected or refused the same, search and aggravated assault and battery on Plaintiff," while Curry County, the Commissioners, Tori Sandoval, and Pyle "failed to administer, investigate, and review the unjust and wrongful search and aggravated assault and battery." Complaint ¶¶ 55–56. She asserts "Defendants failed to provide Plaintiff the same right to the full and equal benefit of all laws and proceedings for security of persons and property as is enjoyed by white citizens," and that they failed to "address complaints by Hispanic persons" and failed to "protect members of the Hispanic community from physical mistreatment." Complaint ¶ 58.

To establish a claim under § 1981, Youngquist must show (1) she is a member of a protected class; (2) Defendants had the intent to discriminate on the basis of race; and (3) the discrimination interfered with a protected activity as defined in § 1981. *Hampton v. Dillard Dep't Stores, Inc.,* 247 F.3d 1091, 1101 (10th Cir. 2001). Section 1981 establishes four protected interests: "(1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments." *Phelps v. Wichita Eagle-Beacon,* 886 F.2d 1262, 1267 (10th Cir. 1989).

Defendants move to dismiss Youngquist's § 1981 claim because she did not allege the existence of a contractual right or interest, but they fail to address the protected interest of § 1981 that Youngquist alleged: the "full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." Complaint ¶¶ 57–58 (quoting 42 U.S.C. § 1981). The bulk of cases dealing with § 1981

15

admittedly focus on the right to make and enforce contracts clause. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) ("Any claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights."); *Hampton*, 247 F.3d at 1102 (discussing § 1981 litigation arising from the right to make and enforce employment contracts as well as discrimination claims when a contract has been established). But the Tenth Circuit has acknowledged a claim under the full and equal benefits clause exists, even though it has not fully analyzed one. *See Shawl v. Dillard's Inc.*, 17 F. App'x 908, 912–13 (10th Cir. 2001) (unpublished) (remanding for the district court to clarify its ruling with respect to the full and equal benefits clause claim). Cases under the equal benefit clause typically require a plaintiff to show: (1) racial animus; (2) a relevant law or proceeding for the "security of persons and property"; and (3) that defendants deprived the plaintiff of the full and equal benefit of such law or proceeding. *Phillip v. Univ. of Rochester,* 316 F.3d 291, 297–98 (2d Cir. 2003); *see also Chapman v. Higbee Co.*, 319 F.3d 825, 832–33 (6th Cir. 2003) (requiring a plaintiff to demonstrate "the denial of the benefit of a law or proceeding protecting his or her personal security or a cognizable property right" and "intentional discrimination on the basis of race, which involves a high threshold of proof").

In Defendants' Reply, however, Defendants argue a different ground for dismissing Youngquist's § 1981 claim: section 1983 provides the *exclusive* federal remedy for the violation of rights guaranteed by § 1981 when the claim is pressed against a state actor. "[Section] 1981 does not provide a vehicle for remedying racial discrimination and retaliation in cases brought against state actors. Rather, § 1983

16

'provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.'" *Hannah v. Cowlishaw*, No. 15-7009, 2016 WL 362981, at *2 (10th Cir. Jan. 29, 2016) (unpublished) (quoting *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735 (1989)); *see also Bolden v. City of Topeka,* 441 F.3d 1129, 1134–37 (10th Cir. 2006) (ruling that, even after the 1991 amendments to § 1981, a claim against a municipality for violating § 1981 must be brought under § 1983); *Lawrence v. Sch. Dist. No. 1*, 560 F. App'x 791, 794-95 (10th Cir. 2014) (unpublished) ("Congress designed § 1983 to supply the remedies when state actors violate the civil rights protected by § 1981."). Thus, the Court will dismiss Youngquist's Count III which alleges a § 1981 violation because she brings the claim solely against state actors. Although the Court will not go so far as to say that allowing Youngquist to amend her Complaint would be futile, it notes that, to the extent Youngquist incorporated her § 1981 allegations into her § 1983 claim, the Court has already analyzed her claim under § 1983 and has likewise dismissed the claim against all Defendants other than Stuart and Harrison. *But see Bolden*, 441 F.3d at 1137 (noting that if the plaintiff had not been sufficiently clear about bringing the § 1981 claim under § 1983, the district court should have permitted him to amend his complaint); *Cowlishaw*, 2016 WL 362981, at *4 (remanding with instructions to dismiss the § 1981 claim and provide the plaintiff "the opportunity to amend the complaint to add a § 1983 claim premised on an alleged violation of his § 1981 rights").

**IV.**

For the reasons stated above, Defendants' Partial Motion to Dismiss is **GRANTED**. The Court will dismiss with prejudice Count I, alleging a violation of 42 U.S.C. § 1983, as against Defendants The Board of County Commissioners for Curry County, Lance Pyle, Tori Sandoval, Robert Sandoval, Ben McDaniel, Frank Blackburn, Wendell Bostwick, and Tim L. Ashley, individually and in their official capacities. The Court will also dismiss with prejudice Counts II and III, alleging violations of 42 U.S.C. §§ 1985 and 1981, respectively, as against all Defendants. The claims remaining include Count I, which alleges a violation of 42 U.S.C. § 1983 against Defendants Brittany Harrison and Nicole Stuart in their individual capacities, and Count IV, which alleges state-law tort claims. This case is referred to United States Magistrate Judge Stephan M. Vidmar to enter a revised scheduling order.

SO ORDERED.

    Entered for the Court
    this 9th day of February, 2016.


    Bobby R. Baldock
    United States Circuit Judge
    Sitting By Designation